USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/27/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
   ALEX DUNA,

                     Plaintiff,

        -against-

   CITY OF NEW YORK, *et al.*,

                     Defendants.
------------------------------------------------------------- X

17 Civ. 5371 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Alex Duna brings this action under 42 U.S.C. § 1983 and New York state law against Defendants the City of New York ("the City") and New York City Police Officers Rodriguez and Hasan ("Defendant Officers"). Defendants move for summary judgment on all claims under Federal Rule of Civil Procedure 56. For the following reasons, Defendants' motion is granted.

I. **BACKGROUND**

      The facts below are undisputed except as otherwise noted and taken from the parties' submissions on the instant motion. The facts are construed in favor of Plaintiff as the nonmoving party. *Testa v. Becker*, 910 F.3d 677, 684 (2d Cir. 2018).

      Plaintiff's claims arise from events that occurred on the morning of Sunday, June 26, 2016, at the 42nd Street Times Square subway station. Defendant Hasan and nonparty Officer Saini were patrolling the station that morning and, at around 10:00 a.m., Hasan observed Plaintiff sitting on the floor, leaned up against a pole, charging his phone.

      Because the Gay Pride Parade was scheduled to occur that day, Hasan did not want anyone to block the free movement of people within the station. Hasan approached Plaintiff and explained that he did not want anyone hanging around the station because of the parade. Hasan

told Plaintiff that he could continue to charge his phone, as long as he left "after a short time." The officers told Plaintiff three or four times that when he was done charging his phone, he had to leave the station.

Defendant Rodriguez and nonparty Officer Collada approached, and Hasan told Rodriguez that Plaintiff was refusing to comply with instructions to leave. Because of Plaintiff's refusal, Hasan and Saini decided to eject Plaintiff physically from the station. Rodriguez helped Plaintiff to his feet by placing his hand under Plaintiff's armpit. Rodriguez and Collado then physically escorted Plaintiff to an escalator leading towards the exit, with Hasan and Saini behind them. As he was being escorted, Plaintiff called 9-1-1 and was transferred to NYPD's Internal Affairs Bureau ("IAB"). When they reached the top of the escalator, Collada escorted Plaintiff towards the "high-wheel" turnstile exit, which functions like a revolving door.

The parties heavily dispute what happened next. According to Plaintiff, an officer pushed him from behind into the turnstile, where Plaintiff's right arm and backpack became inextricably wrapped around a horizontal turnstile pole, causing Plaintiff to become physically stuck inside the turnstile. Plaintiff testified that he hit and injured his left knee on the turnstile when he was pushed. Defendants, in contrast, claim that Plaintiff entered the turnstile on his own, turned around and purposely wedged his shoe in the turnstile so that it would not move. The parties agree that Plaintiff remained inside the turnstile for fifteen to twenty minutes, and during this time it could not be used by anyone else entering or leaving the station.

Photographs taken while Plaintiff was inside the turnstile show his right arm hanging loosely between two horizontal turnstile poles. Plaintiff's left arm is inside the turnstile with the rest of his body, and his left elbow rests, unobstructed, on the turnstile frame. The photographs also show the front half of Plaintiff's right shoe stuck in the bottom of the turnstile, in between

the bottom-most horizontal pole and the outer metal frame.  During his deposition, when presented with Defendants' photographs, Plaintiff repeatedly refused to explain which part of his body was actually stuck in the turnstile.

While inside the turnstile, Plaintiff remained on the phone with IAB but did not mention that he was stuck in the turnstile.  Nonparty Lieutenant Lu repeatedly ordered Plaintiff to exit the turnstile and repeatedly warned him that the officers would be forced to remove him if he did not.  After several unsuccessful attempts to get Plaintiff to leave the turnstile, the officers decided to remove him and arrest him.  They dislodged his shoe from under the bottom pole, and then pushed his feet through the turnstile.  Plaintiff testified that the officers twisted his left arm as he was removed from the turnstile.  However his arm was not swollen, and he did not seek medical treatment.

Rodriguez handcuffed Plaintiff after he was removed from the turnstile.  The parties agree that there are no photographs of bruising and redness on Plaintiff's hands or wrists from being handcuffed.  Plaintiff was arrested on charges of Resisting Arrest under New York Penal Law Section 205.30 ("Section 205.30"), two counts of Disorderly Conduct under New York Penal Law Section 240.20(5) and (6) ("Section 240.20(5)") and violation of local law.

Plaintiff was transported to NYPD Transit District 1 Precinct.  Plaintiff did not request medical treatment for any injuries at the precinct.[1]  He was arraigned on July 27, 2016, on charges of Resisting Arrest under Section 205.30 and Disorderly Conduct under Section 240.20(5), and released on his own recognizance.

---

[1] Plaintiff testified that he sought treatment for his left knee nine months after his arrest, following an incident at work where he was assaulted by a co-worker.

3

Plaintiff made a complaint to the Civilian Complaint Review Board regarding his arrest on July 1, 2016, and was interviewed regarding the allegations on July 29, 2016. Plaintiff's criminal charges were dismissed on February 27, 2017, pursuant to speedy trial requirements.

## II. LEGAL PRINCIPLES

### A. Summary Judgment

Summary judgment is appropriate if the record establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party "bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Id.* at 114 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (alteration in original). The evidence is construed in the light most favorable to, and all reasonable inferences are drawn in favor of, the nonmoving party. *Id.* at 113. Summary judgement is improper if there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn. *Id.* at 123.

## III. DISCUSSION

The Complaint asserts claims under § 1983 and state law for false arrest, malicious prosecution and excessive force; a claim under § 1983 for denial of the right to a fair trial; and federal and state claims against the City for municipal liability, all based on the events that occurred the morning of June 26, 2016.

To succeed on a claim under § 1983, a plaintiff must establish (1) that the defendant was a state actor (i.e., acting under color of state law) when he committed the violation, and (2) that

the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015). A plaintiff must also establish the personal involvement of each defendant in the alleged constitutional violation. *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016).

For the following reasons, summary judgment is granted to all Defendants on all claims.

### A.     False Arrest

Summary judgment is granted to Defendant Officers on the federal and state false arrest claims because the officers had probable cause to arrest Plaintiff, and they are protected by the doctrine of qualified immunity.

#### 1. Probable Cause to Arrest

A § 1983 claim for false arrest is based on the Fourth Amendment, which protects a person from an unreasonable seizure of their person. *Mara v. Rilling*, 921 F.3d 48, 73 (2d Cir. 2019). When analyzing § 1983 false arrest claims, "we have generally looked to the law of the state in which the arrest occurred." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016). "Under New York law, a false arrest claim requires a plaintiff to show that 'the defendant intentionally confined him without his consent and without justification.'" *Id.* (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

Probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017). An officer is not required to have probable cause for the specific offense that is eventually charged, but rather, a false arrest claim fails if probable cause existed to arrest a suspect for *any offense*. *Ackerson v. City of White*

*Plains*, 702 F.3d 15, 19 (2d Cir. 2012); *accord Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 409 (S.D.N.Y. 2018).

Defendant Officers are entitled to summary judgment on the false arrest claim because they had probable cause to arrest Plaintiff for at least Obstruction of Governmental Administration under New York Penal Law Section 195.05 ("Section 195.05"), which states that "[a] person is guilty of obstructing governmental administration when he intentionally . . . prevents or attempts to prevent a public servant from performing an official function, by means of . . . physical force or interference . . . ." N.Y. Penal Law § 195.05; *see Kass v. City of New York*, 864 F.3d 200, 206-07 (2d Cir. 2017).

For the purpose of probable cause, the only issue is whether Defendant Officers reasonably believed that Plaintiff was not stuck, but instead was intentionally preventing his own exit from the turnstile. Plaintiff argues that his backpack, arm and hand were inextricably wrapped around a horizontal turnstile pole and, as a result, he could not follow Lieutenant Lu's repeated orders to exit the turnstile. Even viewing the evidence in the light most favorable to Plaintiff, no reasonable juror could find that Defendant Officers reasonably should have believed that Plaintiff's foot or arm was trapped, or that he was otherwise unintentionally stuck in the turnstile. Photographs taken while Plaintiff was inside the turnstile, depicting what Defendant Officers must have seen, show Plaintiff's right arm hanging loosely between two of the turnstile's horizontal poles. In his right hand, Plaintiff holds the strap of his backpack, which is dangling and appears to be resting on the ground. No reasonable juror could expect Defendant Officers to conclude that Plaintiff's arm was "stuck in the turnstile," as the photographs show that Plaintiff could have easily released the backpack strap from his right hand and slid his arm between two horizontal poles. It is clear that Plaintiff's left arm was not stuck, as the

6

photographs show it was safely inside the turnstile with the rest of his body. Nor could a reasonable juror have expected Defendant Officers to conclude that the front half of Plaintiff's right shoe trapped him inside the turnstile, as the photographs show that Plaintiff could have slid his foot out from between the bottom-most horizontal pole and the turnstile's metal frame, which is what the officers eventually did to get Plaintiff out. Defendant Officers' reasonable belief that Plaintiff was preventing his own exit is reinforced by the fact that Plaintiff remained in the turnstile for fifteen to twenty minutes without making any effort to get out, and by the fact that Plaintiff did not report that he was stuck during his ongoing conversation with the IAB. Based on the evidence as a whole, no reasonable juror could conclude that Defendant Officers lacked probable cause to believe that Plaintiff was preventing his own exit. They are entitled to summary judgment on the false arrest claim because they had probable cause to arrest Plaintiff for violating Section 195.05.

### 2. Qualified Immunity

For false arrest claims, an officer is entitled to qualified immunity if he can establish that there was "arguable probable cause" to arrest. *Dufort,* 874 F.3d at 354. Arguable probable cause is a question of law and exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed (i.e., "whether a reasonable official would reasonably believe his conduct did not violate a clearly established right"), *Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018), or (b) when officers of reasonable competence could disagree on whether the probable cause test was met. *Dancy*, 843 F.3d at 107. The standard of review for qualified immunity is intentionally "forgiving," *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013), as "qualified immunity 'protects all but the plainly incompetent or those who *knowingly* violate the law.'" *Berg*, 897 F.3d at 109 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

Even assuming that a reasonable juror could conclude that Defendant Officers lacked probable cause -- i.e., that a reasonable officer should have concluded that Plaintiff was unintentionally stuck in the turnstile -- Defendant Officers are entitled to summary judgment on the false arrest claim because, based on the evidence discussed above, officers of reasonable competence could disagree on whether the probable cause test was met.

Because the defenses of probable cause and qualified immunity to a claim of false arrest are similar under state law and § 1983, Defendant Officers are entitled to summary judgment on the Complaint's state law claims for false arrest. *See Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007); *accord Adams v. City of New York*, 226 F. Supp. 3d 261, 268 (S.D.N.Y. 2016).

### B.     Excessive Force

Summary judgment is granted to Defendant Officers on the federal and state excessive force claims because Plaintiff's alleged injuries were *de minimis* and not objectively unreasonable under the circumstances.

The Fourth Amendment prohibits the use of excessive force in making an arrest. *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018). Other than § 1983's requirement that the tort be committed under color of state law, "the essential elements of [a § 1983 excessive force claim and a state law assault and battery claim are] substantially identical." *Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991); *accord Shaheed v. City of New York*, 287 F. Supp. 3d 438, 452 (S.D.N.Y. 2018). To succeed on an excessive force claim, a plaintiff must show that the amount of force used was "objectively unreasonable." *Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. 1990); *accord Collins v. City of New York*, 295 F. Supp. 3d 350, 369 (S.D.N.Y. 2018). Whether force was objectively unreasonable is a question of fact that considers "the severity of the crime

8

at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Outlaw*, 884 F.3d at 366 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Not every push or shove . . . violates the Fourth Amendment," *Graham*, 490 U.S. at 395 (internal citation omitted), as "[t]he right to effectuate an arrest does include the right to use some degree of physical coercion." *Shaheed*, 287 F. Supp. 3d at 453 (alteration in original). For an excessive force claim to be actionable, the force used by law enforcement must generally be more than *de minimis*. *Figueroa v. Mazza*, 825 F.3d 89, 105-06 (2d Cir. 2016).

According to Plaintiff, he was pushed from behind into the turnstile, where he hit and injured his knee. However, the evidence does not show which officer -- and in particular, whether a Defendant Officer -- pushed Plaintiff into the turnstile. Because Plaintiff must establish the personal involvement of a defendant in the alleged constitutional violation, the excessive force claim based on the alleged push into the turnstile fails. *See Cox v. Fischer*, 248 F. Supp. 3d 471, 484 (S.D.N.Y. 2017) (granting summary judgment on an excessive force claim where plaintiff failed to provide evidence that defendant officer participated in use of force against him). Even assuming that one or both Defendant Officers pushed Plaintiff, any resulting injury was *de minimus*.[2]

That the officers twisted Plaintiff's arm when they removed him from the turnstile also does not constitute excessive force. It is undisputed that Plaintiff's arm was not swollen, and he did not seek medical treatment. Defendant Officers reasonably used some force in ejecting Plaintiff from the turnstile. He apparently had wedged himself in the turnstile for fifteen to

---

[2] Plaintiff testified that he sought treatment for his left knee nine months after his arrest, following an incident at work where he was assaulted by a co-worker.

9

twenty minutes at the Times Square subway station at 10:00 a.m. on the day of a major parade. The officers repeatedly warned Plaintiff that they would be forced to remove him if he did not leave the turnstile voluntarily. The officers ultimately had to remove Plaintiff forcibly from the turnstile, by dislodging his shoe and effectively pushing him through the turnstile, so that they could arrest him on the other side. That degree of force was *de minimus* and not unreasonable under the circumstances. *See, e.g.*, *Smalls v. County of Suffolk*, No. 14 Civ. 4889, 2019 WL 4038742, at *15 (E.D.N.Y. Aug. 27, 2019) (concluding that it was not objectively unreasonable for defendant officer to have shoved plaintiff after plaintiff's verbalized resistance, and that the excessive force claim failed as a matter of law where the evidence showed no injury related to the shove); *Rodriguez v. Vill. of Ossining*, 918 F. Supp.2d 230, 238 (S.D.N.Y. 2013) (granting summary judgment on an excessive force claim because the undisputed facts indicated that defendant's use of force was *de minimis* where plaintiff alleged only that defendant "grabbed [her] arm" and "scratch[ed] her," without alleging that the scratch was "even remotely painful or serious").

As to the alleged injuries from handcuffing, Defendant Rodriguez handcuffed Plaintiff, but the parties agree that there are no photographs of bruising and redness on Plaintiff's hands or wrists, nor does the record suggest that Plaintiff complained then or now that the handcuffs were too tight. These facts are insufficient to sustain a claim for excessive force based on being handcuffed. *See Ziming Shen v. City of New York*, 725 Fed. App'x 7, 11-12 (2d Cir. 2018) (summary order) (concluding that the record did not support a finding that defendant officers used excessive force, in part, where plaintiff offered no evidence that the handcuffing caused him further injury), *cert. denied sub nom. Ziming Shen v. City of New York, N.Y.,* 139 S. Ct. 78 (2018); *Arroyo v. City of New York*, 683 Fed. App'x 73, 75 (2d Cir. 2017) (summary order)

(concluding that, even assuming defendant officers handcuffed plaintiff, there was "no genuine dispute of material fact as to whether her handcuffing involved excessive force," where plaintiff alleged no physical injury and never asked for the handcuffs to be removed). Accordingly, Defendant Officers are entitled to summary judgment on Plaintiff's excessive force claims because no reasonable juror could conclude that the force Defendants used was excessive.

C. **Denial of the Right to a Fair Trial**

Summary judgment is granted to Defendant Officers on the federal denial of the right to a fair trial claim because no reasonable juror could conclude that they intentionally falsified information or fabricated evidence.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial." *Bellamy v. City of New York*, 914 F.3d 727, 745 (2d Cir. 2019) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). To assert a denial of the right to fair trial claim based on the fabrication of evidence, a plaintiff must show that: "(1) [an] investigating official, (2) fabricates information, (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). Probable cause is not a defense to a denial of the right to a fair trial claim. *Id.* at 278.

As evidence of fabrication, Plaintiff identifies disparities between his version of the events and Defendant Officers' versions and argues the disputed statements were contained in official documents, forwarded to the district attorney and used to deprive Plaintiff of his liberty. Specifically, Plaintiff identifies factual disputes over the number of pedestrians who were forced to walk around him, the degree to which he obstructed their movement, whether he purposely

11

wedged himself into the turnstile and whether he resisted being placed in handcuffs by pulling his hands away. These differences in the various accounts of Plaintiff's arrest are insufficient to create a genuine dispute as to whether Defendant Officers intentionally falsified information or fabricated evidence. *See Bennett v. Vidal*, 267 F. Supp. 3d 487, 498 (S.D.N.Y. 2017) (concluding that "mere difference in testimony" between defendant, plaintiff and plaintiff's mother of the events that occurred the day of the arrest was insufficient evidence to create a genuine dispute of material fact as to whether defendant officer intentionally falsified information or fabricated evidence); *Lauderdale v. City of New York*, No. 15 Civ. 1486, 2018 WL 1413066, at *8 (S.D.N.Y. Mar. 19, 2018) (concluding that "a mere difference in the testimony" between plaintiff and defendant officers about what occurred the day of the arrest was insufficient evidence for plaintiff's denial of the right to a fair trial claim to survive summary judgment).

Except for the central issue of whether Plaintiff intentionally barricaded himself in the turnstile, the discrepancies relate to immaterial facts, unlikely to influence a jury's verdict. As to the turnstile question, as discussed above, the photographs of Plaintiff in the turnstile are powerful evidence of Defendants' version of the facts. Even if they were mistaken and Plaintiff was inadvertently stuck in the turnstile, Plaintiff has not adduced any evidence of intentional fabrication, rather than reasonable error. *See Harris v. City of New York*, 222 F. Supp. 3d 341, 351-52 (S.D.N.Y. 2016) (denying summary judgment after defendant officers told a prosecutor that a weapon belonged to plaintiff because "on the facts presently before [the court] there [was] absolutely no basis on which a police officer could have concluded that [the weapon] belonged to [p]laintiff."). Because no reasonable juror could conclude that Defendant Officers deliberately

falsified any information, summary judgment is granted on Plaintiff's denial of the right to a fair trial claim.

### D.     Malicious Prosecution and Municipal Liability

Summary judgment is granted to Defendant Officers on Plaintiff's malicious prosecution claims and § 1983 municipal liability claim.

In contrast to a pro se litigant's failure to respond to an opponent's motion for summary judgement, "in the case of a *counseled* party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (emphasis added); *accord Carpenter v. City of Mount Vernon*, No. 15 Civ. 0661, 2018 WL 4935950, at *4 (S.D.N.Y. Oct. 11, 2018). Plaintiff's opposition to Defendants' motion contains no argument regarding malicious prosecution or municipal liability under federal law. These claims are dismissed because they were abandoned.

Even if Plaintiff had defended these claims, neither would survive summary judgment. The malicious prosecution claim fails because "[p]robable cause is a complete defense to a constitutional claim of false arrest . . . . And continuing probable cause is a complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citations omitted). As discussed above, Defendant Officers had probable cause and, in the alternative, arguable probable cause to arrest Plaintiff. That probable cause was continuing as nothing in the record suggests that, after Plaintiff's arrest, Defendant Officers came upon new information to change their reasonable belief that he had committed the obstruction crime.

The municipal liability claim fails because the record contains no evidence that Plaintiff "suffered the denial of a constitutional right that was caused by an official municipal policy or

custom," *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019), as required by *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).

E. **Respondeat Superior**

Summary judgment is granted on Plaintiff's *respondeat superior* claim against the City. Under the doctrine of *respondeat superior*, an employer can be held vicariously liable for the torts committed by an employee acting within the scope of employment. *Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016). As none of Plaintiff's other claims survive summary judgment, there is no underlying tort for which the City can be held liable. *See Harsco Corp. v. Segui*, 91 F.3d 337, 349 (2d Cir. 1996) (upholding dismissal of plaintiff's respondeat superior claims because there was no surviving underlying theory of liability); *accord Morris v. City of New York*, No. 15 Civ. 3121, 2017 WL 3588941, at *10 (S.D.N.Y. Aug. 18, 2017).

IV. **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgement is GRANTED.

The Clerk of Court is respectfully directed to close the motion at Docket Number 56 and to close the case.

Dated: September 27, 2019
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**